May it please the Court, I'm Jerry Doebling. I have the privilege of representing the Wilbergers. And on their behalf, I'm requesting that the Court reverse the summary judgment entered against them on behalf of Creative Building Maintenance and remand the case for trial. Help me with a problem I have here. All right. When I read the briefs, it was it was kind of like another Paul's graph case. And I started reading the blue brief and I and I thought, wow, you hire a dangerous janitor and then he rapes and kills one of the tenants in the building. Janitors have keys that get into people's apartments and get into people's offices. And then I discover it not only wasn't it a building that Creative Maintenance had serviced, it wasn't even a town where they go. And the only connection was he was driving a company truck, which he wasn't supposed to be driving. He'd already he was supposed to have given it back. He'd been asked for the keys. What am I missing here? Well, I think that's a mistake. I'm glad you brought up the Paul's graph case because when we're taking a look at Fasolari, Justice Lindy discusses Paul's graph on pages 1329, 1330 and 1331, and it's again referred What is the connection here that made it foreseeable? Number one. That if I got the facts right, it wasn't a company building, it wasn't even a company town. That part, no. The evidence is that he had Oregon and Washington as a part of his territory. Well, he doesn't serve. Did he have keys to the building where the victim lived? No. Did he work service a building in the town where the victim lived? No. Was there any connection between the company and the victim's building, except that he used a company truck to get to it? No. How does furnishing him a truck make it foreseeable that he'll drive someplace that the company doesn't do any business? He was doing business in the State of Oregon. As a result of doing business in the State of Oregon, he traveled to a variety of towns. He was unsupervised. They don't even they didn't even agree that he was working on May 24th, the date of the Anybody, once he has a truck, he's not limited to Oregon. I mean, gosh, I've driven across the whole United States. A lot of people have. So if he'd gone out and raped a woman in Delaware, I guess the company would be responsible if he had a company truck. Is that right? No, I don't believe so. What we have is he is within the area of his responsibility. The day that he was working was a day for which he was paid. Didn't you just tell us that C.B.M. didn't have any business in Corvallis? I said he did not he was not there on a particular business. He was not in Corvallis servicing a C.B.M. client. Next question. Does C.B.M. have clients in Corvallis? Not that we know of. Then what's the difference between Corvallis for this example in Delaware? Well, because there are other places of business in Oregon to which he may have been going. Now, okay, they do business in Oregon, as was stated in the letter. Is there any evidence that he was going through Corvallis in order to get to a place that C.B.M. had assigned him to? I don't know that. I don't know that. I think that part of the issue was that he was in custody. Mr. Courtney was in custody. And depositions were not taken of him because he was in custody at the request of the district attorney. I was really struck by this Buchler case where it was a victim suit against the government for negligent supervision when a criminal escaped from a work camp in a state correction band where keys were left in the ignition and he then killed the victim and injured some others, and the Court said as a matter of law the harm that occurred wasn't the responsibility of the government because there was an intervening criminal act, so that your facilitation is not enough. Now, that seems like a much stronger case for foreseeability than here. What do I do about Buchler? Well, Buchler, let me discuss Buchler, if I may. That came out, and what that case said and what all the following cases citing Buchler have said, in which you have an employer or a person in control of an individual who then commits a tort, that unless there is a history that the employer or person in control knew or should have known of a violent propensity similar to the act that was committed, then there is no case to follow. So you look, following Buchler, did the individual who committed the crime have a history of violence similar to the crime he committed while he was under the control? You still need some causal connection. Is there anything to suggest that had the company never hired this fellow, he still wouldn't have gone out and raped and killed some woman? We can't say. Sounds like he's a bad man who does that sort of thing. Let's take, in a recent example, came up. I'm asking now, in this case, I'm trying to connect the employment with the crime. Is there any evidence that, and I'm asking about the weakest form of causation, but for causation. Is there anything to show that had the company never hired this criminal that he wouldn't have committed the crime anyway? He was provided with a badge, a uniform, the disguise, the respectability, the ability to get from one place to another within his territory. Was there evidence that the badge and the uniform may have facilitated his commission of the crime? Only that it can be inferred in that he was doing his job and working in the prison at the time of the crime.   No. The only evidence is the position of his employment on that date. Is there evidence he was wearing the badge and the uniform when he committed the crime? The only evidence is the inference that he was on the job, working and being paid. Wait. We know he was not on a job because they don't have a client in Corvallis, Oregon. I'm asking about evidence here. Okay. The evidence is that he was employed and paid for work on that date. Do you have a genuine issue of fact about whether he was still employed? They say he wasn't. You say he was, and I'd say there's a genuine issue. Okay. Beyond that, is there any evidence? Okay. No, beyond that. But in this case, the evidence should be interpreted on behalf of the plaintiff. Here's another thought that we had that I thought just came up. May 1st, New York City, Times Square. A van is parked full of explosives. According to the creative building theory, if that van would have been loaded with explosives because creative building maintenance also worked in New York, that the only people that could have a right of recovery would be customers or clients of creative building maintenance. The law of general foreseeability is that it extends to all those people, and we can go through all the things in Fasolari talking about duty or no duty or foreseeability. It is foreseeable that putting a sexual predator and giving him a disguise, giving him a van to travel, that he will do what he has done in the past, and that is commit another crime of violence against a woman. And that falls within the jury's discretion of a material fact under Fasolari. But why does giving him a van and stuff make that any more likely? I mean, if he's that sort of man, why shouldn't we infer that he'd commit a violent rape and murder or something like that, whether the company ever hired him or whether the company ever gave him a van to drive or not? The defense made quite a point in their brief. I mean, they didn't give him a van to drive to Corvallis, and they didn't give him a key to a building in Corvallis. They gave him the key. The company's only connection is he's a bad man and they hired him. They gave him the disguise, respectability. They gave him the opportunity of driving down there and attack this woman. That is, falls within. Let's take the other cases we have. There's no disguise and respectability here. There's no evidence that he was wearing his badge and uniform. It can be inferred because he was paid for working on the job that day. How can that be inferred? We know he's not a good guy. He does what he's told. He didn't return his keys when he was supposed to. Well, that's disputed. That's disputed. We dispute Lamelli's testimony as well, as we put in our brief. We dispute his testimony. And I don't think that he was. There's also no evidence that the badge and uniform had anything to do with the crime. For all we know, he just snuck up on her while she was in the parking lot or something and grabbed her. We don't know anything about the crime, actually. Is it in the record? Did I miss it? We only know that he committed the crime, and he did it on a work day with the badge and the uniform that inferred. If he is working and being paid for the day, it is a reasonable inference that he was a good guy and that he was a good person.  We don't know anything about the evidence that he was a good person as he would appear. I guess one of the troubles I have is how far that would go. I mean, I don't think Buchler allows us to go that far, but you think anybody who has a job who commits a crime during a work day, then the employer is potentially   We have no evidence that the employee is actually responsible because the evidence is CBM did not in fact know that this man was violent. And even if he did, it was 20 years ago. So I'm just thinking that there's no logical stopping point here. Well, if you take ñ you talked about new. The issue is whether they knew. But I ñ That's not the knowledge, but what's the stopping point? Doesn't anyone who has a job and commits a crime during a working day, potentially the employer is liable under your theory? No. We take a look at all the future cases, and what they have is this. If the employer or person in control knew or had reason to know, and I have 14 cases in line that repeat that, know or reason to know. I suppose they do. So you're saying strict liability for employers who have reason to know that they're hiring criminals. Or an ex-felon. So you're saying anyone who hires an ex-felon? If they had reason to know that he was a dangerous sexual predator, if their own rules and regulations prevented them from hiring him, if they would have followed their own rules and regulations. If their own rules and regulations infer that they were aware of and knew the danger and wanted to protect their own clients and the public. Okay. Any felon, incidentally? Pardon me? Any felon? Strict liability if you hire a felon?  A felon that has committed these rapes. Now, when Buechler and all the cases say there should be a connection between the prior criminal act, as if he were a trespasser or a burglar or Buechler or something else like that, that is not foreseeable that he is then going to go out and commit this other act. If Buechler, had he had a history of violence, had he had a history of rape, that would have been the unknown third party that Buechler got to by using a van would have recovered. Does Buechler say that? Pardon me? Does Buechler say that? You read Buechler as to why he didn't. The reason Buechler did not recover is because there was no history of violence. Does Buechler say that? Flipping that. Just tell me, does Buechler say that? Not in those. No. You take a look at the other side of that coin. You don't recover because there's no history of violence. Therefore, had you had a history of violence, she would have recovered. Because that's not what Buechler is. I read it, and maybe I'm missing some language in there, but their theory seemed to be that there was an intervening criminal act, and I don't recall them saying anything about whether they knew what sort of crime he had done. The cases say, if there is an intervening criminal act, the party may not recover unless there is a history of a violent crime on part of the perpetrator, the person who did it. Therefore, if there is a history, then they can recover. Buechler could have recovered had there been a history of the violent act by the person that, in fact, that harmed her. Thank you, counsel. Good morning. My name is Stephen Dethridge, and I represent Creative Building Maintenance. And I think the first thing I'd like to say is we all can agree that the circumstances of this case are heart-wrenching and horrific. I have no idea what they are. Did I miss it? Is it in the record? Well, it's the folder. I was kind of curious, too, about what the role of the van was in the crime, whether he'd used company keys to get access to someplace. I didn't find anything about the circumstances in the record, but I might have missed it. And I guess what I'm referring to, I'm referring to the circumstances that aren't in the record, that are in the newspaper accounts. This was a young woman. Is the newspaper account in the record? No, it is not, Your Honor. Is there anything in the record so that I could tell what happened? No. So this was well-known in Portland, but the information wasn't part of our record on appeal. Is that correct? Correct, Your Honor. Didn't make the Fairbanks Daily News Minor. Apparently not. What I would like to say to complete that thought is that Brooke Wilberger was a credit to her family. She would have been a credit to society, and it's a heartbreaking case. With that said, the Court is charged with fashioning rules of law that are practical and that society can work with, and the rule of law that's advocated here by counsel would require every employer in the State of Oregon, before they hire an employee, to do a background check on that employee. And if something came up in the background check, even a 20-year-old conviction and, frankly, on the record, we don't know if there was violence that was involved with that 20-year-old conviction. Well, does it make a difference? Because I think opposing counsel's point is that this company, CBM, said we do do background checks, we only have people who are upright that don't have this sort of criminal record. And opposing counsel says that really makes a difference here. Why doesn't it? Well, Your Honor, that is a, for lack of a better word, a marketing statement that was made by CBM to their clients and to potential clients. It's not an objective standard that a jury could apply to determine whether or not they met a standard of care. It would matter a lot if the victim had read that and thought, oh, well, employees of this company are fine people, and let them into an apartment on account of that. Is there any evidence? No. Is there also evidence once they say they do background checks, is that circumstantial evidence that they ought to do background checks? It's or is it, I mean, is it just some more campaign rhetoric, as we say these days? It's certainly circumstantial evidence that they have an aspirational goal of doing background checks. I don't know. They didn't represent they were aspiring to do background checks. They weren't saying we'd love to have some help because we aspire to do background checks. They say we do background checks. Isn't that circumstantial evidence that they ought to do background checks? Isn't that an acknowledgment? Perhaps, but it's not a – there's no case law, there's no statute, there's no regulation that requires them to do background checks. If this was a client or if this was a tenant of an apartment complex that was a client and CBM was hired because of a representation that they would do background checks, this would fall into a different fact pattern. But since there were no clients in Corvallis, since this apartment complex wasn't a client and she wasn't a client, there was no way she could or anyone could have relied on it. I don't see that it matters that she wasn't a client. If a janitor at the commercial building where I have my chambers committed a crime against one of my law clerks, I don't think it would matter that my law clerk had not hired the building maintenance service. What would matter is the building maintenance service hired a dangerous person, gave him a key, and made it part of his routine to come into my chambers after hours when my law clerks are typically still there working hard. So I don't see where the client thing matters at all. And I'm not making that distinction. The only reason I even point that out is because in Chesterman, the court of appeals made note of the fact that the victim in that case was not a client or a potential client. But the context of making the remark matters. Sure. I would also say that if she was a co-employee at CBM, then she would be in the scope of a foreseeable harm. I think if the janitorial service had given her keys and she committed a crime or he committed a crime against somebody in the building to which the janitorial service had given him the keys, the janitorial service might very well be on the hook. I agree. So I think that client remark in the case you cited is just different context, not extendable. Well, now, opposing counsel says that Buchler, which has very strong facts, has been confined by subsequent cases as being that the intervening criminal act breaks whatever foreseeability or chain only if the intervening criminal act is one that is of the same sort or is not of the same sort as the person who was involved. And I think the criminal in Buchler had committed property crimes as opposed to crimes of violence. Is that a correct description of the cases? Well, the other thing about Buchler was he had, as a child, he had a reputation of a violent personality and the corrections department knew that he also had a drug problem. So there was some indication that he may be prone to violence. I guess if we were to compare the facts of Buchler with this case, again, there's a 20-year-old conviction. There was a sex abuse one, an attempted rape conviction, but there's no evidence in the record as to what the circumstances of those convictions were. Now, if we look at the record at page 73 of the excerpt of record, it has a list of the crimes that could have been discovered if there had been a background check, and the sex abuse one was at a three-month jail sentence, and the attempted  Well, it doesn't say what the felony was there, but there's no indication as to whether or not it involved any kind of violence against the victim. So, again, if we're comparing this with Buchler, in Buchler there was some indication that the person who was in the custody of the corrections department, and by the way, the corrections department has a 24-hour-a-day, 7-day-a-week obligation to supervise prisoners in their custody. There was some indication that that particular prisoner could be violent. Here, there's no indication that this potential or that this employee could be violent or could be capable of this crime. Did you say that this man was convicted of attempted rape? Are you – is this a statutory rape? It could have been. We don't know. The record doesn't say. Oh, I see. Your position is that attempted rape is not categorically always involved with a crime of violence. And that's correct. And one of the certain – Is that the same crime as – I see it was the same date. Was it just one occasion, two crimes, and he got three months to serve? That's correct, Your Honor. So, and then – and I'm not, frankly, sure which subsequent case that counsel was referring to, but I think the facts at Buechler were the – it was basically a provision of a van. Basically, the corrections department gave a convict a van by leaving the keys in the van and leaving him unsupervised, and he took a van and went and committed crimes. That's exactly what CBM is accused of doing here, giving Mr. Courtney the van, and then he went and did something in a town that he had no business being in and an apartment complex he had no business being at. So Buechler says mere facilitation is not enough to hold the government liable in that case. Has that been changed by any subsequent Supreme Court, Oregon Supreme Court cases or other case law? No, it has not, Your Honor. And, in fact, in Buechler, the Supreme Court overruled a – it's rare that the Supreme Court overrules an earlier precedent. And they overruled one of the three cases that had been decided the same day that Fazzolari was decided, the case in which a criminal broke into GI Joe's, stole a shotgun and some shotgun shells, and then went and shot somebody. The Supreme Court in that case, the Kimbler case, concluded that it was foreseeable that a criminal would break into a loosely or poorly guarded gun area and steal a gun and then go do what criminals do. In Buechler, the Supreme Court overruled that earlier precedent and said, if I may, while it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the Criminals Acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity. They said that. They overruled the earlier precedent. So what we have here is cases like Chesterman, where the court of appeals ruled that an employee who the employer knew was taking drugs and hallucinogenic drugs, that employee, while on the way from one work site to the next, stopped at a woman's home, broke into her home, and raped her. The court of appeals advanced that. Kagan. But that was before Fazzolari. That was before the Fazzolari trilogy, I guess, is what they referred to. Sure. But they used the same foreseeability language that Justice Lindy used in Fazzolari. And, in fact, they said, to establish that a defendant owed plaintiff a duty to use reasonable care in retaining the employee, she would have to show that it was reasonably foreseeable that she would come into contact with him as a result of his employment. Reasonable foreseeability is the standard that was set by Justice Lindy in Fazzolari. Also, this case was reviewed by the Supreme Court and affirmed the year after Fazzolari was decided. So if the Supreme Court had thought that the – that what the court of appeals had done, the standards they used in Chesterman, were somehow improper, they could have fixed that. Another case is the Miller case, where, again, the court of appeals determined that a criminal act was not foreseeable. So in some, and I don't know if there's more questions, but the district court ruled that it was not reasonably foreseeable that Mr. Courtney would come into contact with Brooke Wilberger and harm her as a result of that. And that decision was correct and should be affirmed. Thank you, Kev. Thank you. Wilberger v. Creative Building Maintenance is submitted. We're adjourned for the morning.
judges: Kleinfeld, Bea, Ikuta